UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIC N. HEYER, *Plaintiff*, v. SCHWARTZ & ASSOCIATES PLLC, *et al.*, *Defendants.* | Civil Action No. 16-0836 (DLF) |

**MEMORANDUM OPINION**

Eric Heyer brings claims for breach of contract, breach of fiduciary duty, and negligent misrepresentation against Schwartz & Associates and its sole member, Christopher Schwartz. Before the Court is the defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 7. For the reasons that follow, the Court will grant the motion in part and deny it in part.

**I. BACKGROUND**

The following facts are taken from the complaint, which is presumed truthful at this stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Heyer and Schwartz, both lawyers, left a national law firm in spring 2012 to start their own two-person law firm called Schwartz & Associates. Compl. ¶¶ 8–11, Dkt. 1. They did not create an operating agreement, but tax forms indicate that at the start, Heyer held a 20 percent equity interest and Schwartz held an 80 percent interest. *Id.* ¶ 12. Heyer and Schwartz had been working largely for one particular client at their old firm, and they created the new firm primarily to serve this client with their own billing arrangement. *Id.* ¶ 9.

Schwartz, on behalf of Schwartz & Associates, signed a written agreement with the principal client that required the client to pay Schwartz & Associates a fixed fee each month. *Id.* ¶¶ 15–16. Schwartz and the client also agreed orally that the client would pay a 25 percent contingency fee on any recovery resulting from Schwartz & Associates' representation. *Id.* Heyer and Schwartz agreed orally that Heyer would be entitled to a fixed monthly distribution along with a portion of any contingent fee recoveries received from the client. *Id.* ¶ 13.

In spring 2013, Schwartz & Associates successfully negotiated a settlement that allowed the client to recover $2.1 million. *Id.* ¶¶ 17–18. But the client failed to promptly pay the 25 percent contingency fee—$525,000—and Schwartz failed to press the client for payment. *Id.* ¶ 19. In late summer 2013, Heyer and Schwartz agreed to increase Heyer's equity share to 30 percent and that Heyer would receive 30 percent of future contingency fees from the client. *Id.* ¶ 21. Heyer and Schwartz also agreed that Heyer would receive $150,000 of the $525,000 already earned. *Id.* ¶ 22.

Unbeknownst to Heyer, however, Schwartz had struck a deal with the client that significantly reduced the $525,000 amount. *Id.* ¶ 26. Another law firm had assisted Schwartz & Associates on one of the client's cases, and under the deal, the law firm was paid from the $525,000. *Id.* Heyer learned about the deal several months later from the client. *Id.* ¶ 27. Schwartz initially denied that he had made such deal, but in early January 2014 he notified Heyer that he had accepted an amount of $305,484.29 instead of $525,000 from the client. *Id.* ¶¶ 29, 33. Heyer ultimately received 30 percent of the $305,484.29 amount, which at $91,645.29 was $58,354.71 less than the $150,000 he was promised. *Id.* ¶ 38.

Also in early January, the client indicated that it might end the litigation for which it had retained Schwartz & Associates, cutting off Schwartz & Associates' primary source of revenue.

*Id.* ¶ 31. The client assured Heyer, however, that it would continue to pay the funds necessary for Heyer to take his fixed monthly distribution for the next three months. *Id.* ¶ 35. Schwartz, in turn, promised Heyer that he would receive that monthly distribution through May 2014. *Id.* ¶ 36.

Meanwhile, Schwartz & Associates helped the client settle three additional cases in January and February, and Schwartz promised Heyer that he would ensure that they would receive the 25 percent contingency fees from the client. *Id.* ¶ 39. Heyer continued to work for Schwartz & Associates, assuming that he would continue to receive his fixed monthly distribution and his portion of the contingency fees. *Id.* ¶ 41.

On February 19, however, the client told Heyer that beginning in March it would no longer pay the funds corresponding to his fixed monthly distribution. *Id.* Schwartz then decided to withhold Heyer's fixed monthly distribution for February. *Id.* ¶ 42. Heyer left Schwartz & Associates and resumed work at the national law firm in mid-March. *Id.* ¶ 43. After Heyer left, the client settled two additional cases that Schwartz & Associates had worked on. *Id.* ¶ 44. Schwartz, however, never pressed the client to pay the contingency fees—for these two cases or the three that had settled earlier. *Id.* ¶¶ 40, 44.

As Heyer prepared to sue the client for the promised fixed monthly distribution and contingency fees that summer, Schwartz and the client entered into a release agreement covering all potential claims of Schwartz & Associates principals, agents, and authorized representatives. *Id.* ¶ 46. In exchange, the client's majority owner—who also owned an entity that acted as Schwartz & Associates' landlord—gave Schwartz & Associates free rent for ten months. *Id.* ¶ 48. Heyer's claims were ultimately heard by an arbitration board, which awarded Heyer an

amount corresponding to his fixed monthly distribution for the first half of March 2014 during which he was unemployed. *Id.* ¶ 47.

Heyer brought this suit in April 2016, the defendants moved to dismiss in September 2016, and the case was reassigned to the undersigned judge in December 2017.

## II. LEGAL STANDARDS

Rule 12(b)(1) allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994). When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). But the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" in order to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6), meanwhile, allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 557 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III. ANALYSIS

Heyer alleges four counts: breach of contract against Schwartz & Associates, breach of contract against Schwartz, breach of fiduciary duty against Schwartz, and negligent misrepresentation against Schwartz. Compl. ¶¶ 50–73. Heyer alleges several injuries: he did not receive the promised $150,000 portion of the contingency fee for the first settlement; he did not receive the promised 30 percent of contingency fees obtained in other cases; and he did not receive his fixed monthly distribution for February 2014. *Id.* ¶¶ 51–53.

### A. Shareholder Standing

The defendants argue that Heyer's breach of contract claim against Schwartz & Associates and breach of fiduciary duty claim against Schwartz violate the shareholder standing rule. *See* Defs.' Br. at 1–2, 7–13, Dkt. 7-1. According to the defendants, this rule "flow[s] from" the prudential standing doctrine. *Id.* at 7.

It is unclear whether the shareholder standing rule should be categorized under the label of prudential standing or Article III standing. The Constitution empowers the federal judiciary to adjudicate only cases or controversies. U.S. Const. art. III, § 2, cl. 1. The doctrine of Article III standing, which requires a plaintiff to allege that the defendant injured the plaintiff in a judicially redressable manner, enforces this limitation. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). If Article III standing does not exist, the court lacks jurisdiction and may not "step[] where the Constitution forb[ids] it to tread" by addressing the merits. *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016).

Unlike Article III standing, the prudential standing doctrine involves "judicially self-imposed limits on the exercise of federal jurisdiction." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (internal quotation marks omitted). The D.C. Circuit has held that "prudential standing

[is] a jurisdictional issue." *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 674 (D.C. Cir. 2013) (internal quotation marks omitted). The Supreme Court, however, has cast doubt both on that holding and on the doctrine of prudential standing as a whole. *See Lexmark v. Static Control Components*, 134 S. Ct. 1377, 1388 (2014) (calling prudential standing a "misleading" label because "[j]ust as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because 'prudence' dictates"); *id.* at 1387 n.3 (observing that when a requirement is jurisdictional, it is an Article III requirement, not a prudential one).

Historically, the prudential standing label has covered the prohibition against suing on behalf of another, which includes the shareholder standing rule. *See Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). But recent cases indicate that the shareholder standing rule is properly categorized under the label of Article III standing, not prudential standing. *See Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 784 F.3d 804, 814 (D.C. Cir. 2015), *vacated and remanded on other grounds*, 137 S. Ct. 1312 (2017); *see also Schum v. FCC*, 617 F. App'x 5, 6 (D.C. Cir. 2015) (per curiam); *Gilardi v. HHS*, 733 F.3d 1208, 1230 (D.C. Cir. 2013) (Edwards, J., concurring in part and dissenting in part). Regardless of the label, the shareholder standing rule poses no bar to Heyer's claims for the reasons discussed below, and thus the Court need not resolve which label is more appropriate.

The shareholder standing rule prohibits shareholders, with some exceptions, "from initiating actions to enforce the rights of the corporation." *Franchise Tax Bd.*, 493 U.S. at 336. The law distinguishes these derivative claims (brought on behalf of the company) from direct claims (those brought in a shareholder's unique interest). "Claims of corporate mismanagement must be brought on a derivative basis because no shareholder suffers a harm independent of that

visited upon the corporation and the other shareholders. Because each shareholder has been injured in proportion to his equity ownership, each will be made whole if the corporation obtains compensation or restitution from the wrongdoer." *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir. 1984); *see also* D.C. Code § 29-808.01 ("[A] member may maintain a direct action . . . against another member, a manager, or the limited liability company to enforce the member's rights and otherwise protect the member's interests" so long as the injury "is not solely the result of an injury suffered . . . by the limited liability company.").

According to the defendants, most of Heyer's claims really belong to Schwartz & Associates. Defs.' Br. at 9–11, 15–16. That precludes the claims, the defendants continue, because Heyer did not follow the requirements for derivative claims. *See* Fed. R. Civ. P. 23.1 (establishing a procedural roadmap for shareholders wishing to bring a derivative claim). The defendants premise the derivative-claims argument on the contention that "any recovery for the alleged breach[es] would flow through [Schwartz & Associates] before it reached Heyer." Defs.' Br. at 9. That is, because Heyer's injuries are based on fees unpaid by the client to Schwartz & Associates—fees that if paid would have been apportioned to Heyer—any injury to Heyer derives purely from injury to Schwartz & Associates.

The defendants' argument is too clever by half. The complaint alleges that after the parties and client agreed on a particular fee structure in which Heyer would receive a particular portion of the fees, the defendants altered the fee structure in ways that reduced Heyer's proceeds. This alleged redirection of funds did not necessarily injure the company—which was allegedly offsetting would-be injuries with compensating benefits—but it certainly injured Heyer.

That resolves the issue. "[A] shareholder may proceed against his company on an individual basis" when there is a "special injury to the individual stockholder." *Cowin*, 741 F.2d at 415 (internal quotation marks and emphasis omitted). Specifically, "a personal cause of action is properly pursued in two situations—where the allegedly wrongful conduct violates a duty to the complaining shareholder independent of the fiduciary duties owed that party along with all other shareholders, or, where the conduct causes an injury to the shareholders distinct from any injury to the corporation itself." *Id.* Because those are the kinds of injuries Heyer alleges, the shareholder standing rule poses no bar to his claims.

### B. Breach of Contract against Schwartz

The D.C. Uniform Limited Liability Company Act provides that "[t]he debts, obligations, or other liabilities of a limited liability company, whether arising in contract, tort, or otherwise shall: (1) [b]e solely the debts, obligations, or other liabilities of the company; and (2) [n]ot become the debts, obligations, or other liabilities of a member . . . solely by reason of the member acting as a member." D.C. Code § 29-803.04(a). The defendants argue that the breach of contract claim against Schwartz must be dismissed because the alleged contracts were between Heyer and Schwartz & Associates—the company—which means that Schwartz cannot be personally liable. Defs.' Br. at 14–15. Heyer responds that the contracts at issue were not only between Heyer and the company but were also between Heyer and Schwartz in his individual capacity. Opp'n at 19, Dkt. 11. Heyer notes that the complaint specifically describes the contracts as between himself "and Schwartz." Compl. ¶¶ 58–60.

The complaint does not allow for a reasonable inference that Schwartz agreed to personally guarantee the promised funds to Heyer; the complaint suggests instead that Schwartz and Heyer made the agreements as members of the LLC. The complaint alleges breaches of

9

three contractual duties: (1) the promise that Heyer "would receive $150,000 of the contingent fee received from the [client] for the cases that were settled in February 2013," *id.* ¶ 58; (2) the promise that Heyer "would receive 30 percent of 25 percent of the amounts received by the [client] in settlement of the other collection cases," *id*. ¶ 59; and (3) the promise that Heyer "would receive [the fixed monthly distribution] for the month of February 2014, *id.* ¶ 60. The complaint indicates that Schwartz entered into each of these agreements in his capacity as a member of the LLC. As for the February 2013 contingency fee, Heyer and Schwartz agreed "that of the $525,000 . . . that was already due and owing from the client, $150,000 would be paid to [Heyer]." *Id.* ¶ 22. It is clear that the parties contemplated the $150,000 being drawn from funds paid by the client to Schwartz & Associates, not from Schwartz's personal bank account. Likewise, the promise that Heyer would receive 30 percent of later contingency fees was made in exchange for Heyer "continuing his efforts on behalf of Schwartz & Associates." *Id.* ¶ 21. And the fixed monthly distribution too was earned from "working for and on behalf of Schwartz & Associates." *Id.* ¶ 13. The complaint contains nothing to suggest that Schwartz departed from the regime of limited liability to personally guarantee these funds. The Court will therefore dismiss the breach of contract claim against Schwartz.

    C.    **Negligent Misrepresentation**

"[A] plaintiff alleging negligent misrepresentations or omissions must show (1) that the defendant made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that the plaintiff reasonably relied upon the false statement or omission to his detriment." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015) (internal quotation marks and alterations omitted). Heyer alleges that Schwartz committed this tort by failing to disclose that he agreed to reduce the $525,000 contingency fee and that he

10

intended not to pursue contingency fees corresponding to other recoveries, and by affirmatively representing the opposite of these truths. Compl. ¶ 70. The defendants argue that Heyer fails to allege that Schwartz had a duty to disclose these facts. Defs.' Br. at 16–17. They maintain that any duty to disclose here could only be based in contract and that a contractual obligation cannot serve as the basis for a negligent-misrepresentation claim. *Id.*

The Uniform Limited Liability Company Act imposes duties on LLC members apart from any contractual obligations. For example, "[a]n act outside the ordinary course of the activities and affairs of [a member-managed limited liability company] may be undertaken only with the consent of all members." D.C. Code § 29-804.07(b)(4); *see also id.* § 29-804.09 ("A member of a member-managed limited liability company owes to the company and . . . the other members the . . . duty of care," which "requires the member to refrain from engaging in grossly negligent or reckless conduct, willful or intentional misconduct, or a knowing violation of law."); *id*. § 29-804.09(d) ("A member in a member-managed limited liability company . . . shall discharge the duties and obligations under this chapter . . . consistently with the contractual obligation of good faith and fair dealing."). The complaint alleges that Schwartz funneled incoming funds that partially belonged to Heyer into places where Heyer would not take a cut, and multiple of these statutory provisions probably obligated Schwartz to disclose as much. In any event, Heyer alleges not only omissions but also false statements, which means that he need not allege a duty to disclose at all. *See Sundberg*, 109 A.3d at 1131 ("[A] plaintiff alleging negligent misrepresentations or omissions must show . . . that the defendant made a false statement *or* omitted a fact that he had a duty to disclose." (emphasis added)).

Finally, the defendants argue that Schwartz & Associates should be categorized as a manager-managed LLC, Reply at 9 n.11, Dkt. 13; in such LLCs a member does not "have any

11

fiduciary duty . . . to any other member solely by reason of being a member," D.C. Code § 29-804.09(i)(5).  But the Uniform Limited Liability Company Act provides that "[a] limited liability company shall be a member-managed limited liability company unless the operating agreement . . . [e]xpressly provides that . . . [t]he company is or will be 'manager-managed' . . . or [i]ncludes words of similar import."  D.C. Code § 29-804.07(a).  The defendants point to no such words.  Therefore, the Court will not dismiss the negligent misrepresentation claim against Schwartz.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the defendants' Motion to Dismiss.  Dkt. 7.  Specifically, the motion is granted only with respect to Count Two (for breach of contract against Schwartz), which is dismissed with prejudice.  The motion is denied in all other respects.  Thus, Count One (breach of contract against Schwartz & Associates), Count Three (breach of fiduciary duty against Schwartz), and Count Four (negligent misrepresentation against Schwartz) are not dismissed.  A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

Date: August 2, 2018